UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cr-00068-MOC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **JAMIE LYNN SWARTZ,** | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's pro se letter (#107). The defendant is presently incarcerated on the Judgment entered by this court on March 25, 2016, sentencing her to 70 months imprisonment. Defendant did not appeal that Judgment, which is now final.

The instant letter requests a sentence reduction based on United States v. Quintero-Levya, 823 F.3d 519 (9th Cir. 2016). The pro se defendant also mentions an opinion from the Seventh Circuit Court of Appeals. This court sits in the Fourth Circuit and opinions from other Circuits do not bind this court, but they may be persuasive.

In Quintero-Levya, the Ninth Circuit held that certain non-exhaustive factors "should [be] consider[ed]" in determining whether to apply a minor role reduction:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

1

823 F.3d at 524 (quoting USSG § 3B 1.2 comment 1(c)).  Even if the court were to apply the Quintero-Levya factors to the instant case, it would weigh against the application of the minor role. Each of the factors weighs against the application of the minor role.

(i) **The degree to which the defendant understood the scope and structure of the criminal activity**. Here, the defendant bought crystal meth locally and knew she could get better quality material from her contacts in the Atlanta, Georgia area. She would travel to Georgia multiple times per week to then distribute the crystal meth to her local customers in North Carolina. See Factual Basis (#46).

(ii) **The degree to which the defendant participated in planning or organizing the criminal activity.** Among other things, Swartz would place an order for crystal meth with Lisa Keith Jenkins and meet with a source of supply. She also obtained crystal meth and marijuana from another source of supply in Atlanta, Georgia. See Factual Basis (#46).

(iii) **The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority.** Swartz admitted that she arranged the trip to Atlanta in September 2013. At some points, Swartz was moving 8 ounces of crystal meth at a time every day or every other day. Indeed, she admitted to selling a baseball sized quantity of crystal meth to a buyer on August 28, 2013 outside a Sylva Waffle House. See Factual Basis (#46).

(iv) **The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts**. As noted in (iii) above, the facts are clear that the nature and extent of defendant's

2

participation was more than a minor role. She actively trafficked, bought, and sold narcotics across state lines and pled guilty to such activity. See Factual Basis (#46).

- **(v) The degree to which the defendant stood to benefit from the criminal activity**. Swartz bought crystal meth for $1,000 per ounce in Georgia and sold it for $1,200 per ounce in North Carolina. That is a profit of $200 per ounce to which the defendant stood to gain from the criminal activity. See Factual Basis (#46).

As this court has noted, no additional levels were imposed for the defendant's role in the offense. The court has previously denied the defendant's three prior letters, deemed to be Motions to Correct of Reduce a Sentence under Rule 35. See (ECF #102, #104, & #106). The court quotes its earlier Order:

> Defendant's request for a sentence reduction is not timely as the Judgment is now final and the court lacks authority to alter such sentence at this point under Rule 35(a) or Rule 36 of the Federal Rules of Criminal Procedure. The court notes that defendant received a below guidelines sentence based on a joint motion for a downward variance (based on her criminal history overstating the seriousness of prior criminal conduct) and that no additional levels were imposed for her role in the offense.

Here, the court has considered the instant request under 18 U.S.C. § 3582. § 3582(c)(2), which permits a sentence reduction based on an amendment to the Sentencing Guidelines. In pertinent part, § 3582 provides, as follows:

> **(c) Modification of an Imposed Term of Imprisonment**.— The court may not modify a term of imprisonment once it has been imposed except that—
> ***
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to

the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). In turn, § 1B1.10(b) of the Sentencing Guidelines provides that in determining whether relief is available under § 3582(c):

> the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b). Thus, when a court is asked to modify a sentence under § 3582, it may substitute only the retroactive amendment, while leaving all original sentencing determinations in place. Freeman v. United States, 131 S.Ct. 2685, 2692 (2011). As discussed above, if such amendment is in fact retroactive, it has no application to this defendant's sentence for the reasons discussed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's letter (#107), deemed to be a Motion for Modification or Reduction of Sentence under Section 3582, is **DENIED.**

Signed: November 10, 2016

Max O. Cogburn Jr
United States District Judge

4